**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| TRADEX SWISS AG | : | CASE NO. 07-17180-JBR |
| <u>DEBTOR                              </u> | : | |
| In re | : | Chapter 15 |
| TRADEX SWISS AG | : | CASE NO. 07-17518-JBR |
| <u>DEBTOR                              </u> | : | |

# MEMORANDUM OF DECISION ON 07-17180:
**CHAPTER 7 INVOLUNTARY PETITION [#1]; ANSWER OF FOREIGN REPRESENTATIVES AND APPLICATION FOR RECOGNITION OF FOREIGN PROCEEDING [#11]; MOTION OF FOREIGN REPRESENTATIVES TO CONSOLIDATE LEAD CASE 07-17180 WITH 07-17518 AND CONVERT THE CONSOLIDATED CASE TO CHAPTER 15 [#13]; OPPOSITION TO PETITION FOR RECOGNITION [#24]; AND MOTIONS OF PETITIONING CREDITOR CHENG SONG QI TO JOIN INVOLUNTARY PETITION [#56 AND #57];**
**AND**
**ON 07-17518:**
**PETITION FOR RECOGNITION OF FOREIGN PROCEEDING [#2];  MOTION TO CONSOLIDATE LEAD CASE 07-17180 WITH 07-17518 [#3]; AND OPPOSITION TO CHAPTER 15 PETITION [#9]**

These cases came before the Court for a continued evidentiary hearing on various pleadings by which the self-styled "foreign representatives"[1] challenge the commencement of the involuntary Chapter 7 case and seek consolidation of the involuntary case with the Chapter 15 proceeding while the petitioning creditors in the involuntary case ("Petitioning Creditors") seek to deny recognition of a foreign proceeding.[2]  The crux of the dispute is whether the proceeding commenced against

---

[1] Prior to adjudication of their status, the foreign representatives were referred to by the Court as the foreign liquidators.

[2] The Chapter 7 petition was filed on November 7, 2007; the Chapter 15 petition was filed November 26, 2007.  Judge Somma, who initially presided over these cases,

Tradex Swiss AG by the Swiss Federal Banking Commission ("SFBC") is a "foreign proceeding" within the meaning of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, and if so, whether the foreign proceeding is a "foreign main proceeding" or a "foreign non-main proceeding."  The Debtor has not responded to any of the pleadings and did not participate in the hearing.

At the conclusion of the evidentiary hearing, the Court announced its decision and a brief statement of the reasons on the record and noted it would supplement its rationale with a written decision.  The following constitutes the Court's findings and conclusions pursuant to Fed. R. Bankr. P. 7052.

**Facts**

The material facts are largely undisputed.  On July 3, 2007 the SFBC appointed Dr. Peter Lutz and Romeo Da Rugna to investigate the activities of Tradex Swiss AG ("Tradex"),[3] and Swiss Garant AG ("Garant").  The SFBC is the chief Swiss regulatory authority for banks and securities brokers.  According to the SFBC Report of January 2008 and reiterated in the testimony of Mr. Da Rugna, the SFBC oversees individuals and entities performing banking or securities broker functions, whether licensed to carry out such functions or not, including acting as a bankruptcy court for the restructuring or liquidation of banks and securities brokers pursuant to Articles 25(1) and 33(1) of the

---

determined that the Motion to Consolidate and Convert [07-17180, #13] was essentially a motion to dismiss the involuntary proceeding under 11 U.S.C. § 305 and should be treated as such. [07-17180, #33: Memorandum of Decision dated December 12, 2007]. A Certification Pursuant to Fed. R. Bankr. P. 9028 was executed by Judge Joel Rosenthal in each of the above cases.

[3]AG is the abbreviation for "aktiengesellschaft" and signifies that the entity is a corporation.

Swiss Banking Act.[4]  The Report notes that appeals from decisions of the SFBC may and have been taken to the Federal Administrative Court although apparently none have successfully challenged the SFBC's decisions.  It is unclear from the Report whether the Federal Administrative Court has determined the SFBC's authority over unauthorized banks and brokers.  Appeals from the Federal Administrative Court may be taken to the Federal Supreme Court.  In response to an inquiry from the Court, Mr. Da Rugna testified that an appeal to the Federal Administrative Court could take several months to conclude while a subsequent appeal to the Federal Supreme Court would normally be completed more quickly.  Testimony as to the status of a bankruptcy during the pendency of the appeal was unclear.  Mr. Da Rugna testified that not all matters would proceed even in the absence of a stay, which the Federal Administrative Court had the power to grant.  He agreed with the Court's use of the word "limbo" to describe the status of SFBC bankruptcy cases while an appeal is pending.

Tradex, formerly known as Tradex Handels & Beratungs AG, has been described as a "(supposed) foreign exchange trading [company] on an Internet-based trading platform." Investigative Report dated September 27, 2007 ("Investigative Report").[5] The foreign exchange trading, or at least some portion of it, is believed to be "virtual" or in the words or the Petitioning Creditors, akin to a "video game" only, as the client

---

[4]The German version of the SFBC January 2008 Report is Exhibit 2 to the Certification of Romeo Da Rugna [07-17180, #54].  An English translation was subsequently marked as Exhibit 3 at trial.

[5]The English translation of the Investigative Report appears as # 51 on the 07-17180 docket.  With two edits noted in the Certification of Romeo Da Rugna, the Investigative Report was admitted at trial, subject to the Petitioning Creditors' objection to hearsay contained therein.

transactions were not always executed and not fully and continually hedged, if at all. The allegations are that money collected from investors was used by one or more individuals at Tradex for personal enrichment.[6] Nicolaas Jansen van Rensburg, a South African citizen registered as a resident of Switzerland,[7] is believed to be the owner of Tradex and Garant. He is also the President and Chairman of the Board of Directors of Tradex.

Tradex was originally registered in the Canton of Zug, Switzerland. Since approximately February 24, 2006 Tradex has been listed on the commercial register of the Canton of Schwyz, Switzerland. Tradex maintained an office in Feusisberg, Switzerland as well as one in Boston, Massachusetts. The Boston office was headed by Craig Karlis, who had signatory authority for Tradex's bank accounts. There may have been other offices at some point in Latvia, Germany, Bahrain, and the United States although it is unclear whether Tradex actually operated at any of these locations. On or about May 18, 2007, Mr. van Rensburg completed an SFBC form on which he listed Feusisberg as the "Ort der tatsächhlichen Leitung," which Mr. Da Rugna testified translated as the "place of actual control and management."[8] The trading platform by

---

[6] The Court recites these facts as background only. They are not to be interpreted as finding that Tradex's activities are fraudulent. That determination should be made based on an evidentiary record focused on Tradex's alleged trading activities.

[7] Mr. Da Rugna testified that he was not aware of Mr. van Rensberg's current whereabouts although he believed Mr. Van Rensberg might be in London. Mr. Da Rugna noted that Mr. van Rensberg continues to be registered as a resident of Switzerland.

[8] Mr. Da Rugna's direct testimony was admitted by way an affidavit which appears as #54 on the 07-17180 docket.

4

which the trades were accomplished was based at the Boston office, however. Mr. van Rensburg indicated that important company files were located in Boston, not Feusisberg; the investigators found documents in the Feusisberg office in "disarray" but also concluded that no important documents were located there.[9] Over the years, Tradex's operations were transferred to the Boston office; as the number of employees decreased in the Feusisberg location, the number in Boston increased. Operations and employees, including the director of trading, were located in Boston. At the time of the trial, only Mr. van Rensburg, a woman identified as his girlfriend, and a cleaning person were employed in the Swiss operation. A technology consultant was also located in Switzerland. In contrast, approximately 18 employees were located in Boston. Mr. van Rensburg was in Boston at some point, although Mr. Da Rugna did not know how often or for how long. The trading agreement each customer signed was faxed to and maintained in Boston. Deposits made with Tradex were confirmed by emails from the Boston office.

At the time of the filing of the involuntary petition, Tradex had approximately $7.1 million in bank accounts located in the United States.[10] Its putative liabilities are approximately $15 million. At least a plurality of the creditors in number and the

---

[9] The Petitioning Creditors objected to the admissibility of hearsay statements within the Investigative Report. The Court sustained the objections but cites Mr. van Rensburg's statements regarding the records as his statement was substantiated by the investigators' own observations.

[10] Pursuant to Judge Somma's December 12, 2007 Order, Mark DeGiacomo was appointed as interim trustee during the "gap" period. The Interim Trustee has shut down the trading platform and taken possession of Tradex's funds deposited in banks in the United States.

majority in amount are located in the United States.  Although Tradex's creditors are located throughout the world, only 12 of the list of 1,322 account holders are in Switzerland.

In or about August 2007 Craig Karlis and others, including some of the Petitioning Creditors, commenced lawsuits in the Massachusetts Superior Court against Tradex and Bank of America to freeze Tradex funds held in Bank of America accounts and to require Tradex to pay the Boston-based employees' salaries.  The state court judge informed the parties that he would appoint a receiver if no bankruptcy proceedings had been instituted by November 12, 2007.  Although the foreign representatives participated in the state court proceeding, they did not file their petition for recognition until November 26, 2007, almost three weeks after the Chapter 7 petition was filed.  From their appointment in July 2007, the foreign representatives took no steps to shut down the Boston-based trading platform despite their conclusion that the "trades" posed a continuing threat of harm to the public.

On September 27, 2007 the investigators submitted the Investigative Report to the SFBC; in the Investigative Report they concluded that Tradex's activities posed a substantial risk to creditors and investors.  On November 1, 2007 the SFBC issued its decree initiating bankruptcy proceedings against Tradex, Garant, and Mr. Van Rensburg and appointing the investigators as the bankruptcy liquidators.  An appeal of the SFBC's decree is currently pending before the Federal Administrative Court.  The Federal Administrative Court has not issued a stay of the SFBC proceedings yet the inactivity of the foreign representatives suggest they do not believe they had full powers to proceed while the appeal is pending.  They took no action to turn off the trading

platform or take possession of estate funds prior to the filing of the involuntary petition.

**Positions of the Parties**

The Petitioning Creditors assert that the Swiss proceeding is not a foreign proceeding. They argue it is concerned with protecting the Swiss "brand" while the United States bankruptcy is concerned with protecting creditors. Moreover they allege that creditors have fewer rights in the Swiss proceeding and that the state court judge determined that the choice of jurisdiction provision in the trading agreement should not govern jurisdiction.

They also argue that the Swiss proceeding is not a foreign proceeding as the Debtor has no "establishment" in Switzerland. "Establishment," as defined in the Code, is, according to the Petitioning Creditors, a predicate to any foreign proceeding, whether main or non-main. But even if the Court were to recognize a foreign proceeding, the Petitioning Creditors allege that Tradex's "center of main interests" is in the United States, specifically in Boston. Therefore they urge that the most the SFBC proceeding is entitled to is recognition as a foreign non-main proceeding.

They assert that, in addition to or in place of the Chapter 15 proceeding, relief is appropriate under Chapter 7 as the Petitioning Creditors properly invoked the Court's jurisdiction; the Debtor has not filed an objection. They further claim that dismissal of the Chapter 7 case under 11 U.S.C. § 305 is not in the best interest of creditors. Moreover they assert that if the Chapter 7 case goes forward, and if the Court determines that the Swiss proceeding is a foreign proceeding, the Chapter 15 should be dismissed as Chapter 15 will automatically be applicable in the Chapter 7 proceeding.

The purported foreign representatives urge the Court to recognize the SFBC's proceeding as a foreign main proceeding. They claim there is no need for the Chapter 7 case but if it goes forward, it should be consolidated with the Chapter 15 case. The expectation apparently is that the Chapter 7 will survive but that all of Tradex's U.S. assets and claims will come under the auspices of the foreign representatives.

**Discussion**

*A "foreign proceeding" is a necessary predicate to the application of Chapter 15.*

As a threshold matter, the Court must determine whether the proceeding commenced against Tradex AG by the SFBC is a "foreign proceeding" within the meaning of the United States Bankruptcy Code, 11 U.S.C. § 101(23). As the Court noted in its oral decision, although sympathetic to equitable arguments raised by both sides, the determination of whether there is a foreign proceeding calls for strict application of the definitional terms set out in the Bankruptcy Code.

11 U.S.C. §§ 1504 and 1515 outline the procedure by which a foreign proceeding is recognized by a United States bankruptcy court.[11] The first step requires

---

[11] 11 U.S.C. § 1504 provides:

> A case under this chapter is commenced by the filing of a petition for recognition of a foreign proceeding under section 1515.

11 U.S.C.A. § 1515 provides:

> (a) A foreign representative applies to the court for recognition of a foreign proceeding in which the foreign representative has been appointed by filing a petition for recognition.
>
> (b) A petition for recognition shall be accompanied by-

the foreign representative to commence a petition for recognition of a foreign proceeding.[12] The petition must attach copies of English language translations of the documents commencing the foreign proceeding and appointing the foreign representatives. Although the Petitioning Creditors argue that the Chapter 15 petition

---

    (1) a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;

    (2) a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or

    (3) in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.

    (c) A petition for recognition shall also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative.

    (d) The documents referred to in paragraphs (1) and (2) of subsection (b) shall be translated into English. The court may require a translation into English of additional documents.

[12] 11 U.S.C.A. § 101(24) provides:

The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

This definition of a foreign representative is somewhat circular in that a foreign representative must have been appointed in a foreign proceeding but a bankruptcy court does not recognize a foreign proceeding without a petition being filed by a foreign representative. Courts agree, however, it is the person or entity appointed by a foreign tribunal who is the appropriate petitioner. *In re Tradex Swiss AG*, 2007 WL 4374438 (Bankr. D. Mass.).

was not accompanied by a *full* translation of the SFBC's November 1, 2007 decree,[13] that omission is not enough to render the filing invalid. 11 U.S.C. § 1515(b)(3).

Whether Dr. Lutz and Mr. Da Rugna had the right to file the Chapter 15 petition, that is, whether they are truly foreign representatives, depends on whether they have been appointed in a foreign proceeding. Although the Petitioning Creditors argue that the SFBC proceeding is not a foreign proceeding, and indeed the Court had concerns about the authority of the SFBC over unauthorized banks and brokers and the status of the Swiss bankruptcy as in "limbo" during the pendency of the appeal,[14] the language of the Bankruptcy Code establishes that it is. Section 101(23) defines a foreign proceeding as

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are *subject to control or supervision by a foreign court*, for the purpose of reorganization or liquidation. (Emphasis added).

The Petitioning Creditors do not challenge that the SFBC is an administrative

---

[13] Mr. Da Rugna testified that the petition was filed without the translation of the section dealing with the SFBC's statement of reasons for commencing Tradex's Swiss bankruptcy because of time pressure to file the Chapter 15 petition.

[14] The Court was chagrined to learn for the first time during the continued evidentiary hearing that Tradex had taken an appeal of the SFBC decree. The foreign representatives did not introduce any evidence of Swiss law beyond the Report prepared by the very agency seeking to control all of Tradex's assets, wherever located, and spearhead the liquidation and settlement of claims. Although Mr. Da Rugna is an attorney, there was no attempt made to qualify him as an expert on Swiss bankruptcy law. The Court hopes that in the future, foreign representatives will provide clearer evidence as to such matters as the authority of a court or tribunal over the foreign debtor and the impact of any pending appeal on the foreign case.

agency. Nor do they dispute its authority to regulate banks and brokers although they raise the issue of the SFBC's authority over unauthorized banks and brokers. According to Mr. Da Rugna's testimony, the SFBC has exercised authority over such unlicensed persons and entities and there is nothing in the record to indicate that this practice will be terminated any time soon. Therefore there is an "administrative proceeding in a foreign country ... under a law relating to insolvency or adjustment of debt...." The main thrust of the Petitioning Creditors's argument is that the "assets and affairs of the debtor" are not subject to "control or supervision by a foreign court." "Foreign court" is defined in Chapter 15 to mean "a judicial or other authority competent to control or supervise a foreign proceeding." 11 U.S.C. § 1502(3). Even if the decree of the SFBC were not subject to appeal to the Swiss Federal Administrative Court, and then the Swiss Federal Supreme Court, the SFBC itself comes within the definition of a foreign court. Thus the SFBC proceeding is a foreign proceeding and Dr. Lutz and Mr. Da Rugna are the foreign representatives.

*This "foreign proceeding" is either a main or non-main proceeding.*

A foreign proceeding, as defined by Chapter 15, can be one of three types: a main proceeding, a non-main proceeding, or simply a foreign proceeding that is neither main nor non-main. The critical distinction between a foreign proceeding that is neither main nor non-main and a main or non-main proceeding is that the former lacks a debtor's "establishment," that is "any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. § 1502(2). Assuming there were a proceeding in a country which a debtor's only connection was a transitory activity, such

proceeding is not entitled to recognition under chapter 15.  The more realistic scenario is the one confronting the Court: where the foreign proceeding is either a main or non-main proceeding.  The answer turns on where Tradex had its "center of main interests" ("COMI").  11 U.S.C. § 1502(4) and (5).[15]

COMI is not defined by the Code.  It has been described as similar to the concept of principal place of business.  *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 129 (Bankr. S.D.N.Y. 2007).[16]  Such

---

[15]"A 'foreign main proceeding' means a foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4).  "A 'foreign nonmain proceeding' means a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment."  11 U.S.C. § 1502(5).

[16]Judge Lifland, one of the authors of Chapter 15, noted:

> One of the sources that a United States court may look to as persuasive is the Guide to Enactment of the UNCITRAL Model Law on Cross-Border Insolvency ("Guide") that was promulgated in connection with the approval of the Model Law.  *See* Guide to Enactment of the UNCITRAL Model Law on Cross-Border Insolvency, U.N. Gen. Ass., UNCITRAL 30th Sess., U.N. Doc. A/CN.9/442 (1997); *see RSM Richter v. Aguilar (In re Ephedra Products Liability Litigation),* 349 B.R. 333, 336 (S.D.N.Y.2006) (Rakoff, D.J.) ("the House Judiciary Committee, in enacting Chapter 15, specifically indicated that the Guide 'should be consulted for guidance as to the meaning and purpose of [Chapter 15's] provisions.' " *quoting* H.R.Rep. No. 109-31(I), at 106 n. 101, *as reprinted in* 2005 U.S.C.C.A.N. 169 n. 101.). The Guide explains that the use of the concept "where the debtor has the centre of its main interests" as the determinant that a foreign proceeding is a "main" proceeding was modeled on the use of that concept in the European Union Convention on Insolvency Proceedings ("EU Convention") that was already in the process of being adopted when UNCITRAL drafted the

factors as the location of a debtor's headquarters; the location of a debtor's management; the location of its assets and creditors; and the site of the controlling law are important in determining COMI.

Section 1516(c) provides that "[i]n the absence of evidence to the contrary, the debtor's registered office, ... is presumed to be the center of the debtor's main interests." Tradex's registered office is in Switzerland. That does not end the inquiry, however. If contrary *evidence* is submitted, the burden of establishing the COMI shifts to the foreign representatives to demonstrate that Tradex's COMI is in Switzerland.[17] The Petitioning Creditors have amply met their burden with the introduction of such critical evidence as the location of the trading platform in Boston, the fax confirmation of trades from Boston,

---

Model Law.

In the regulation adopting the EU Convention, the COMI concept is elaborated upon as "the place where the debtor conducts the administration of his interests on a regular basis and is therefore ascertainable by third parties." Council Reg. (EC) No. 1346/2000, ¶ 13; *see also* Case 341/04, *Bondi v. Bank of America, N.A. (In re Eurofood IFSC Ltd.),* 2006 E.C.R. I-3813, p. I8-I9, ¶ 32, 2006 WL 1142304 (E.C.J. May 2, 2006). This generally equates with the concept of a "principal place of business" in United States law. *See In re Tri-Continental Exchange Ltd.,* 349 B.R. at 633-34.

*Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.,* 374 B.R. at 129.

---

[17]As courts and commentators have explained, the use of the word "evidence" instead of "proof," which appears in the Model Law, was intended to clarify that the ultimate burden of proving a debtor's COMI is on the foreign representatives. *Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.,* 374 B.R. at 128.

13

the location of assets and a significant number of creditors in the United States, and the fact that signatory authority was designated to the manager of the Boston office.  The burden then rested upon the foreign representatives to show, by a preponderance of the evidence, that the COMI was in Switzerland.  Although there is evidence of some presence in Switzerland, it is not enough to show that the principal place of business was in Feusisberg.  For example, that the Feusisberg location is a larger than the Boston office does not make Switzerland the COMI, especially when there were far fewer employees in Switzerland.  Similarly that the individual who may have benefitted financially from the alleged fraudulent scheme is registered as a resident of Switzerland does not satisfy the burden, especially when the individual is a citizen of yet another country and may now be living in still another.  That Mr. van Rensburg had plans to have visas issued to bring individual customers to Switzerland or that he had grandiose but apparently wholly unfulfilled expectations of setting up offices worldwide is not sufficient.  That the only enterprise in Switzerland appears to be fraudulent also does not carry the day.  Although the Court is sympathetic to the burden placed on foreign representatives in liquidation proceedings such as the instant one where the former employees may be less than cooperative in producing evidence of the allegedly fraudulent scheme or the business activities, the foreign representatives still must establish the COMI by a preponderance of the evidence.  Thus the foreign representatives have failed to carry their burden.  The SFBC proceeding is recognized as a non-main foreign proceeding.

    *Dismissal of the Chapter 7 petition.*

There is no impediment to maintaining a Chapter 7 case in connection with the Chapter 15 one. In fact, § 303(b)(4) contemplates that a foreign representative may file an involuntary petition and authorizes the foreign representative to do so. Although the Petitioning Creditors argue that the Chapter 7 petition should not be dismissed under § 305(a)(1) because dismissal is not in the best interest of the creditors, it is § 305(a)(2) that applies. Section 305(b) expressly grants a foreign representative standing to seek dismissal or suspension of an involuntary proceeding if the conditions of § 305(a)(2). That subsection provides for dismissal or suspension if

> (A) a petition under section 1515 for recognition of a foreign proceeding has been granted; and
> (B) the purposes of chapter 15 of this title would be best served by such dismissal or suspension.

The Court concludes that dismissal is not warranted as the purposes of Chapter 15 are best served by permitting the Chapter 7 to go forward. The Chapter 7 trustee has begun collecting assets and should be permitted to go forward with the administration of the case, especially if the Swiss proceedings are "in limbo" until a decision is made in the pending appeal. The vast majority of creditors are located outside Switzerland; indeed a great number are here in the United States.

**Conclusion**

For the foregoing reasons, an order for relief has entered in the Chapter 7 case. An order of recognition has entered in the Chapter 15 case. The motion to consolidate was denied without prejudice.

Separate orders allowing recognition of a foreign non-main proceeding [07-

15

17518, docket # 21]; denying consolidation [07-17180, docket # 90]; entering an order for relief [07-17180, docket # 87]; and granting the motions to join the involuntary petition [07-17180, docket # 87] have entered.

*Joel B. Rosenthal*

Dated:  March 12, 2008               Joel B. Rosenthal
                                     United States Bankruptcy Judge  _____